UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                        :
BERNELL JONES,
                                                        :
                          Petitioner,         05 Civ. 7774 (WHP)
                                                        :
           -against-                          MEMORANDUM & ORDER
                                                        :

SUPERINTENDENT BRIAN FISCHER,     :

                          Respondent.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


WILLIAM H. PAULEY III, District Judge:

                  Petitioner Bernell Jones ("Jones") seeks a writ of habeas corpus challenging his

January 4, 2000 conviction in New York State Supreme Court (New York County) for robbery.

On April 12, 2007, Magistrate Judge Ronald L. Ellis issued a report and recommendation (the

"Report" or "R&R") that this Court deny the writ with respect to the photographic array and

grant it with respect to the lineup. Both Petitioner and Respondent filed objections. For the

following reasons, this Court adopts the Report in part, rejects the Report in part and dismisses

the petition.


## BACKGROUND

                  The following facts are relevant to the objections to the Report. On March 26,

1998, three men robbed Neil Berman ("Berman") of approximately $30,000 worth of jewelry on

44th Street in midtown Manhattan. (R&R at 1-2.) Berman was carrying diamonds in a Federal

Express package when he was robbed on the sidewalk. He described the perpetrators as African-

American men with dark complexions, over thirty years old, and more than six feet tall, weighing approximately 200-230 pounds, with medium builds. (R&R at 1; Trial Transcript dated Sept. 23, 1999 at 130-33, 190-95; Wade Hearing Transcript dated May 20, 1999 at 19.)

On May 12, 1998, Berman picked Jones's picture out of one of two computer generated photographic arrays. (R&R at 2.) On June 2, 1998, Berman picked Jones out of a lineup. (R&R at 2.)

The trial court held a Wade hearing to determine the admissibility of Berman's separate identifications from the photographic array and lineup. (R&R at 2.) Jones argued that the photographic array was unduly suggestive because he was the only participant whose body size was revealed by the picture. (R&R at 2.) In addition, Jones argued that the lineup was suggestive because none of the other participants resembled him in age, height, or weight. (R&R at 2-3.) The trial court held that neither the photographic array nor the lineup was unduly suggestive, and that evidence from both procedures was admissible at trial. (R&R at 3.)

Jones's first trial resulted in a mistrial after the jury indicated to the court on three separate occasions that it was hopelessly deadlocked. (R&R at 3.) Jones was retried and convicted of robbery in the first and second degrees and sentenced to an aggregate term of twenty-two years to life. (R&R at 3.) The New York State Supreme Court, Appellate Division, First Department, affirmed the conviction, holding that "the photo array and lineup were not unduly suggestive" and that the "defendant and the other participants were reasonably similar in appearance, and any difference was not sufficient to create a substantial likelihood that defendant would be singled out for identification." People v. Jones, 772 N.Y.S.2d 521, 521 (N.Y. App. Div. 2004). The New York Court of Appeals denied leave to appeal on June 7, 2004. People v.

Jones, 816 N.E.2d 203 (N.Y. 2004).   Jones sought neither a writ of certiorari nor other post-conviction relief.  Jones filed this habeas action on September 2, 2005.

Jones's petition argues that the photographic array and lineup were unduly suggestive, and not independently reliable.  Jones asserts that their suggestiveness resulted in an irreparable misidentification of him as a perpetrator.  Magistrate Judge Ellis found in his report that Jones's petition was timely, and that he had exhausted the claims he raised with respect to the photographic array and that he was wearing light-colored pants in the lineup.  (R&R at 4-5.) As for the photographic array, Magistrate Judge Ellis found that while the array was suggestive, the state court's finding that it was not "unduly suggestive" was not an unreasonable application of the law and entitled to deference.  (R&R at 10.)

However, with respect to the lineup, Magistrate Judge Ellis found that "not merely [does] Jones appear[] different from the other participants, . . . he is the only participant meeting the description of the perpetrators given by Berman." (R&R at 11-12.)  Magistrate Judge Ellis found that these differences were exacerbated by Jones's size relative to the other participants, his relative age, his complexion, his position in the lineup, and his distinctive clothing, namely, his different hat and light-colored pants.  (R&R at 12.)  Thus, he concluded that in order to satisfy due process, the identification had to be independently reliable.  Applying the Biggers factors, Magistrate Judge Ellis found that given inconsistencies in Berman's testimony and his earlier descriptions of events that the Biggers factors did not support a finding that the identification was independently reliable.

The Respondent objects to the Report's finding that the lineup was unduly suggestive because Jones failed to exhaust his "different hat" and "light colored pants" claims, and the state court's findings are entitled to deference.  Respondent also objects to the Report's

3

analysis of the Biggers factors. Jones objects to the finding that the photographic array was not

unduly suggestive, and to Report's failure to consider the suggestiveness of the photographic

array as part of the Biggers analysis.

## DISCUSSION

This Court "may accept, reject, or modify, in whole or in part, the findings or

recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1). This Court reviews de novo

those parts of the Report to which objections are made, and reviews the remainder for clear error

on the face of the record. 28 U.S.C. § 636(b)(1); Nelson v. Smith, 618 F. Supp. 1186, 1189

(S.D.N.Y. 1985).

A federal court may grant a petition for habeas corpus only if the state court

adjudication of the merits of the underlying claim: (1) resulted in a decision that was contrary to,

or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding. 28 U.S.C. § 2254(d); Lynn v. Bliden, 443 F.3d 238, 245 (2d Cir. 2006).

## I. Exhaustion

State prisoners seeking habeas relief must first exhaust all state remedies. 28

U.S.C. § 2254; Baldwin v. Reese, 541 U.S. 27, 29 (2004). "[E]xhaustion is satisfied by

presenting the federal claim either on direct appeal to the state's highest court or by collateral

attack of the conviction and subsequent appeal of the denial of that application to the state's

highest court." Gonzalez v. Travis, No. 98 Civ. 6255 (MGC), 2001 WL 1352461, at *5

4

(S.D.N.Y. Nov. 2, 2001). In order for a claim to be properly exhausted, it must have been raised to the state court in a manner "such that the state court had a fair opportunity to act." Galdamez v. Keane, 394 F.3d 68, 73, 76 (2d Cir. 2005) (holding that a claim was properly exhausted where the petitioner had raised all of his factual claims before the Appellate Division). The factual allegations necessary to support the federal claim and essentially the same legal theory in the federal action must have been presented to the state court. See Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982). Therefore, a petitioner who alleges new facts or legal theories in his federal petition has not exhausted his claims. See Gonzalez, 2001 WL 1352461, at *6.

In the state court proceedings, Jones argued that the lineup was unduly suggestive for two reasons: (1) he was the only heavy set person in the lineup and (2) he was the only person who fit the description of the robber's weight. In seeking leave to appeal to the New York State Court of Appeals, Jones raised a third argument, namely, that he wore a different style hat than other lineup participants. In this action, Jones asserts all three of those theories and a novel one—that Jones was the only participant in the lineup wearing light-colored pants.[1]

Jones's later two arguments do not satisfy the exhaustion requirement because the state court was not afforded an adequate opportunity to consider them. The "different hat" and "light colored pants" arguments are not exhausted. See Galdamez, 394 F.3d at 76.

A claim that was not presented to the state court will be deemed exhausted if it is clear that a state court would determine that it was procedurally barred. St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004). Under New York law, a claim that could have been made in the trial court and that is not raised on appeal is barred from later consideration. See N.Y. Crim.

---

[1] Although the Government may have argued the relative weight of the "different hat" and "light-colored pants" arguments, it did not "expressly waive[] the [exhaustion] requirement." 28 U.S.C. § 2254(b)(3).

Proc. L. 440.10(2)(c); see also People v. Cooks, 491 N.E.2d 676, 678 (N.Y. 1986). Because this state procedural ground is "firmly established and regularly followed" by the state courts, it is also an adequate and independent finding of procedural default that bars federal habeas review. See James v. Kentucky, 466 U.S. 341, 348-49 (1984); see also Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). Jones's claim is based entirely on the trial record, and therefore, could have been raised on direct appeal. Accordingly, Jones's claims related to the "different hat" and "different colored pants" are procedurally barred and federal habeas review is foreclosed.

## II. Pre-Trial Identification

Courts employ a two-step procedure to determine the admissibility of pretrial identification testimony. First, the court must determine whether the identification procedures were unduly suggestive. See United States v. Maldanado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990). Suggestive pre-trial identification procedures violate due process by increasing the likelihood of misidentification. Raheem v. Kelly, 257 F.3d 122, 133-34 (2d Cir. 2001). Second, if the pretrial procedures are deemed to be unduly suggestive, then the court must determine whether the in-court identification is "independently reliable." See Maldonado-Rivera, 922 F.2d at 973.

### A. Level of Deference

This Court must presume the correctness of the state court's factual findings unless the applicant rebuts this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 127 S.Ct. 1933, 1939-40 (2007). The constitutionality of pretrial identification procedures is a "mixed question of law and fact" that is not governed by § 2254(d). Sumner v. Mata, 455 U.S. 591, 597 (1982). "[T]he federal court

6

may give different weight to the facts as found by the state court and may reach a different conclusion in light of the legal standard. But the questions of fact that underlie this ultimate conclusion are governed by the statutory presumption." Sumner, 455 U.S. at 597.

        B. Photographic Array

        A photographic array is unduly suggestive where it "gives rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). While a permissible photographic array need not depict nearly identical individuals, it may not suggest that the defendant was the culprit. See United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994). As such, an array "must not be so limited that the defendant is the only one to match the witness's description of the perpetrator." Maldonado-Rivera, 922 F.2d at 974. Thus, the "principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to, suggest to an identifying witness that that person was more likely to be the culprit." United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992) (citations and internal quotation marks omitted).

        The state court's finding that Jones's photograph in the array would not cause him to be unfairly singled out is a finding of fact entitled to deference as a purely factual determination under the "mixed question of law and fact" framework. Velazquez v. Poole, No. 04 Civ. 478 (ENV), 2007 WL 3240550, at *5 (E.D.N.Y. Oct. 30, 2007) (holding that "general physical similarity" was a purely factual determination entitled to the presumption of correctness). Further, the state court's legal conclusion that the photographic array was not suggestive was neither contrary to, nor an unreasonable application of, clearly established federal law. See Velazquez, 2007 WL 3240550, at *5. Therefore, this Court adopts the Report as it relates to the photographic array and Jones's petition is denied with respect to that claim.

C. The Lineup

"A lineup is unduly suggestive as to a given defendant if he meets the description of the perpetrator previously given by the witness and the other lineup participants obviously do not." Raheem, 257 F.3d at 134. A lineup is more likely to cause misidentification if the suspect is the only participant in the lineup who is wearing "'distinctive clothing or otherwise matching important elements of the description provided by the victim.'" Raheem, 257 F.3d at 134 (quoting Israel v. Odom, 521 F.2d 1370, 1374 (7th Cir. 1975)). While there is no requirement that all lineup participants be identical in appearance, Roldan v. Artuz, 78 F. Supp. 2d 260, 271 (S.D.N.Y. 1999) (collecting cases), there must be a "reasonable effort to harmonize the line-up," Douglas v. Portuondo, 232 F. Supp. 2d 106, 112 (S.D.N.Y. 2002). Because this Court has already determined that Jones's claims regarding the "light-pants" and "different hat" arguments were not exhausted and are procedurally barred, Jones's only remaining argument is that he was the only "large" man in the lineup.

When considering the relative body types of the members of the lineup, courts look to whether body type was a "prominent feature" of the witness's description. See Raheem, 257 F.3d at 135-37. Substantial height and weight differences between the defendant and the other members of the lineup may be unconstitutionally suggestive. See, e.g., Solomon v. Smith, 645 F.2d 1179, 1183, 1185 (2d Cir. 1981) (finding a lineup suggestive where every other member was either four inches taller or thirty-five pounds heavier than the defendant and the witness was shown prior lineups comprised almost entirely of men who were similar in both height and weight to the defendant).

Berman's description of the perpetrators was relatively generic: African American men with dark complexions, over thirty years old, more than six feet tall, weighing

8

approximately 230 pounds, and with medium builds. Jones is thirty-seven years old, 6'0" tall, and weighs 230 pounds. All members of the lineup are seated; therefore, differences in height are not as visible. The other members of the lineup range from nineteen to forty-two years old, 5'7" to 5'10" tall, and 158 to 190 pounds.[2] While Jones is the largest man in the lineup, the trial court found, and the Appellate Division affirmed, that the other members were not so different from Jones as to render the lineup suggestive. This finding of fact is entitled to the presumption of correctness under the "mixed question of law and fact" framework. See Carroll v. Greene, No. 04 Civ. 4342 (RWS), 2006 WL 2338119, at *11 (S.D.N.Y. Aug. 11, 2006) (holding that the trial court's finding of similarity in skin color between lineup participants is a factual determination that is entitled to deference). Although Jones is larger than the other men in the lineup, there is no evidence strong enough to disturb the trial court's finding that the members of the lineup were sufficiently similar in appearance. Accordingly, it was not an unreasonable application of Supreme Court precedent concerning identification procedures for the state court to conclude that the lineup was not unduly suggestive. Millan, 1999 WL 178790, at *3.

        Giving deference to the state court's findings of fact, this Court concludes that the lineup was not unduly suggestive. Accordingly, this Court sustains Respondent's objection, and declines to adopt that portion of the Report that concluded that the lineup was unduly suggestive.

---

[2] The exact age, height, and weight of the other members of the lineup are as follows: the first participant was nineteen years old, 5'9", and 190 pounds; the second participant was forty-two years old, 5'7", and 170 pounds; the third participant was Jones; the fourth participant was thirty-three years old, 5'8", and 158 pounds; and the fifth participant was thirty-nine year old, 5'10", and 180 pounds.

CONCLUSION

This Court adopts Magistrate Judge Ellis's Report and Recommendation in part

and rejects it in part and dismisses Jones's petition.  Because Jones has not made a substantial

showing of the denial of a constitutional right, a certificate of appealability will not be issued.

See 28 U.S.C. § 2253(c).  In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that

any appeal from this order would not be taken in good faith.  See Coppedge v. United States, 369

U.S. 438 (1962).  The Clerk of the Court is directed to terminate all pending motions and mark

this case as closed.

Dated:     March 30, 2009
           New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Copy mailed to:*

Hon. Ronald L. Ellis

*Counsel of Record*:

Mitchell J. Briskey, Esq.
The Legal Aid Society
199 Water Street, 3rd Floor
New York, NY 10038
*Counsel for Petitioner*

Frederick H. Wen, Esq.
Attorney General of the State of New York
120 Broadway
New York, NY 10271
*Counsel for Respondent*

10